Trenton Street Railway Company, respondent-complainant,

*v.*

William T. Lawlor, appellant-defendant.

[Argued June 19th. 1908.   Decided November 16th, 1908.]

1. Where the general manager of a street railway company in charge of its affairs knows of negotiations pending between its attorney and the opposite party for the compromise of a litigation, and orders settlement, making no objections to the terms, and the company accepts the benefit of the settlement by seeking to enforce it, this will be tantamount to a ratification of the compromise by the company.

2. It is the general rule that an attorney without special authority is not authorized to compromise his client's claim.   There is, however, no objection to giving an attorney special authority to compromise, in which case the attorney, in agreeing to the compromise, would bind his client.

3. A special authorization from a client to an attorney to compromise a suit at law is not a privileged communication.

4. The only elements necessary to a valid agreement of compromise are the reality of the claim made and the *bona fides* of the compromise.   The court will not inquire into the adequacy or inadequacy of the consideration of a compromise fairly and deliberately made.

5. An accord that is unexecuted is not an available defence at law against the original cause of action, but it may in a proper case become available as an equitable defence thereto.

6. The parties to a suit at law having entered into an agreement of compromise lawful in character at its inception, by. reason whereof the defendant was induced to change its position by discharging its witnesses and surrendering its right to go to trial at the time when prepared, and the plaintiff thereafter having repudiated the contract, and later having moved the cause for trial, the plaintiff will be enjoined from prosecuting his suit at law upon defendant's paying into court for the benefit of the

plaintiff the money which by the terms of the compromise the plaintiff was bound to accept.

7. A tender to one who announces in advance that he will not accept it is unnecessary.

8. Under the circumstances recited in the opinion, the complainant was not in laches in filing his bill.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 203.*

Mr. *George W. Macpherson* and Mr. *W. Holt Apgar,* for the respondent.

Mr. *Thomas F. Noonan,* for the appellant.

The opinion of the court was delivered by

TRENCHARD, J.

This is a bill for an injunction filed by the Trenton Street Railway Company to restrain William T. Lawlor from prosecuting a suit at law against the company for personal injuries and to compel him to perform and carry out an agreement of compromise of the suit alleged to have been entered into by him for a valuable consideration.

The learned vice-chancellor, before whom the case was heard, advised a decree, which was made, granting the relief sought, having found from the evidence that an agreement of compromise had been made whereby the railroad company was to pay and Lawlor was to receive $1,850 in full settlement. From that decree Lawlor appeals to this court.

It appears from the testimony taken before the vice-chancellor that Lawlor brought an action against the railway company in the supreme court to recover damages for injuries received while in the act of alighting from one of its cars. That on October 26th, 1906, the suit came up for trial at the Burlington circuit, and on that day the counsel of the railway company, with Mr. Hurley, its general manager, and their witnesses, went to Mount Holly to try the cause. Upon reaching Mount Holly,

negotiations looking to settlement were had. Mr. Budd, one of the attorneys of Lawlor, said: "They would like to have $1,850, but they would settle for $1,800." Thereupon Mr. Hurley, speaking to the attorneys of the company, "ordered a settlement," and they (the attorneys of the company) offered Mr. Budd $1,800 in settlement of the suit. When this offer was communicated by Mr. Budd to Lawlor, the latter asked Mr. Budd to try to get $60 additional to reimburse him for witness' fees. Mr. Budd returned to counsel for the company, who thereupon agreed to pay, or have the company pay, $50 for witness' fees in addition to the $1,800 to be paid in settlement. This was communicated by Mr. Budd to Lawlor, who thereupon authorized his attorney to settle for that amount. Whereupon, Mr. Budd, in company with Mr. Hurley and the counsel for the company, went into court and announced that the cause was settled. The parties and their witnesses then departed from the court house.

It was understood between counsel for the company and the attorney of Lawlor that a release was to be prepared by the former, to be executed by Lawlor and the money then paid. The release was immediately prepared and sent to Mr. Budd, but Lawlor repudiated the settlement, refused to sign the release, and engaged other counsel who was later substituted as attorney of record. The new counsel, having caused the plaintiff's declaration to be amended in a particular of no importance so far as the present inquiry is concerned, the railroad company at first pleaded accord and satisfaction, but later, upon the plaintiff's again noticing his case for trial, the railroad company filed this bill.

The defendant, Lawlor, on his appeal asserts that the proofs fail to show any agreement of compromise. We think they show an agreement to compromise for $1,850. But the defendant further contends that it does not appear that the agreement actually made by the railroad company's attorney was made by its authority. We incline to think it does. It was proved to have been made by the authority of Mr. Hurley, who testified that he was the general manager of the company. The defendant argues that this may have been true at the time the witness testified, but that there was no proof that he held such office at

the time the compromise was made. It is sufficient to say by
way of answer that Mr. Macpherson, the railroad company's
attorney, testified that Mr. Hurley was general manager at
the time of the compromise. It is further contended that even
if this is so, it is not within the power of a general manager of
a street railway company to authorize the compromise of a suit
unless he has special authority for that purpose from the board
of directors. We know of no such rule. The implied powers of
one who has been appointed general manager of a corporation
are generally understood to be co-extensive with the general
scope of its business (*Thomp. Corp.* § *8556*), and probably in-
clude power to authorize settlement of a claim. But however
these things may be, it certainly is true that where, as in this
case, the general manager of a corporation, in charge of its af-
fairs, knows of the negotiations pending between its attorney
and the opposite party for the compromise of a litigation, and
orders settlement, making no objection to the terms, and the
company accepts the benefit of the settlement by seeking to en-
force it, this will be tantamount to a ratification of the com-
promise by the company. *Thomp. Corp.* § *4943*.

It is further contended by the defendant that the defendant
did not agree to the settlement. We think he did.

It is, of course, the general rule that an attorney without
special authority is not authorized to compromise his client's
claim. There is, however, no objection to giving an attorney
special authority to compromise, in which case the attorney in
agreeing to the compromise would bind the client. *Phillips* v.
*Pullen, 50 N. J. Law (21 Vr.) 439.*

In this case the evidence clearly shows that Lawlor gave Mr.
Budd, his attorney, authority to settle for $1,850.

The contention of Lawlor that he was coerced or otherwise
unfairly treated by his attorneys is not supported by the evi-
dence.

But it is contended that the testimony of the authority of
Mr. Budd, coming as it does from Mr. Budd and Mr. Atkinson,
the attorneys of Lawlor, is not competent proof, because it was
a privileged communication between attorney and client. We
think it was competent. The authority given by Lawlor to his

attorney to compromise the suit was intended to be communicated to the railroad company. It was necessary that the company should be informed of that fact before dealing with Lawlor's attorney. *23 Am. & Eng. Encycl. L. (2d ed.) 75,* and the cases there cited.

Again it is argued that there was no sufficient consideration for the compromise. We think there is no merit in the argument. The only elements necessary to a valid agreement of compromise are the reality of the claim made and the *bona fides* of the compromise. The court will not inquire into the adequacy or inadequacy of the consideration of a compromise fairly and deliberately made. *Grandin* v. *Grandin, 49 N. J. Law (20 Vr.) 508.* The agreement in question was undoubtedly so made.

It was further suggested at the argument that this was not a case for equitable relief, it being contended that the agreement of compromise could be set up as a defence under a proper plea in the action at law. We think this is not so. The agreement for compromise remains unexecuted, the defendant having refused to accept the money and repudiated his contract. It is, therefore, an accord unexecuted. An accord that is unexecuted is not an available defence at law against the original cause of action, but it may, in a proper case, become available as an equitable defence thereto. *Headley* v. *Leavitt, 65 N. J. Eq. (20 Dick.) 748.* In that case Mr. Justice Pitney, at the trial at circuit, refused to permit such a defence to be interposed, on the ground that the accord was unexecuted and that fact was held by this court to justify the filing of a bill in chancery to restrain the plaintiff from further prosecuting her suit at law until she agreed to permit the defendant to take advantage of the contract which he had subsequently executed, this court thereby recognizing that the unexecuted contract, although it constituted an equitable, did not constitute a legal defence. *Headley* v. *Leavitt, 68 N. J. Eq. (2 Robb.) 591.*

We think the present a proper case for equitable relief. The agreement of compromise was lawful in character in its inception, and, as we have pointed out, may be a good defence in

equity.   It is apparent that, by making the agreement of com-
promise with the complainant, Lawlor induced the complainant
to surrender its right to go to trial when it had its witnesses
present and was otherwise prepared.   The complainant having,
in reliance upon the settlement, changed its position by surren-
dering such right and discharging its witnesses, it would be
inequitable to permit Lawlor to withdraw from his contract and
bring on the trial with complainant having a defence which was
not available to it in a court of law only because Lawlor had
refused to accept the money according to the terms of his con-
tract.

Again it is contended that complainant is not entitled to
relief because there was no tender of the money.   But a tender
to one who announces in advance that he will not accept it is
unnecessary.   *Thorne* v. *Mosher, 20 N. J. Eq. (5 C. E. Gr.)
257.*

Nor is there any merit in the suggestion of the defendant
that the complainant is in laches by filing a plea of accord and
satisfaction to the amended declaration and waiting until notice
of trial before filing its bill.   The testimony shows that the posi-
tion of the complainant, with respect to the agreement of com-
promise and its effect, was consistent throughout, and that it
acted with reasonable promptness in filing its bill.

The decree appealed from awards a perpetual injunction
restraining Lawlor, the defendant, from prosecuting his suit
at law against the complainant, and orders that he perform the
agreement of compromise, and accept the sum of $1,850 from
the complainant in full settlement of the suit.   Such is not the
precise form in which the decree should be drafted.   It should
provide that, upon the complainant paying into court, for the
benefit of the defendant, the sum of $1,850, the defendant be
perpetually enjoined from prosecuting or proceeding in his suit
now pending in the supreme court against the complainant, or
any other suit in that or any other court for the same cause of
action.

For the purpose of such modification the decree must be re-
versed and the record remitted to the court of chancery.

53

SWAYZE, J. (dissenting).

I agree with the court that the decree in this case should be reversed, but, in my judgment, the opinion does not go far enough in directing a modification. I think the failure of the complainant to tender itself ready to fulfill the contract made by its attorneys, by which the defendant was to receive $1,850, is fatal to its claim for relief. The defendant never contracted that the case should be settled for $1,800 only. If, however, this difficulty could be overcome by imposing terms upon the plaintiff that it should ratify the contract made by the attorneys, I think the decree to be made should be the same as was made in *Headley* v. *Leavitt, 68 N. J. Eq. (2 Robb.) 591,* and that the appellant should be restrained unless he will consent that the appellee may set up the alleged contract as a defence by way of accord and satisfaction, leaving it to the jury to determine whether there was such a contract, and depriving the appellant only of the right to object that the accord was not followed by a satisfaction.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—14.