On July 17th, 1924, an order was made in the above-stated cause that Frank J. Bock and Edward H. Wright, receivers of the defendant corporation, be directed, subject to the approval of this court, to negotiate and enter into a contract for the sale of certain property of the defendant company (describing it). In pursuance of this order the receivers issued invitations for bids, and in response received sealed bids, one from the John J. Reilly Stevedoring Company, Inc., which appeared to the receivers to be the highest, and it was accepted and a contract entered into between them and the company, July 31st, 1924, which contract recited that in consideration of $550,000 they agreed to sell to that company the property, describing it, $25,000 to be paid upon the execution of the agreement, $193,583 on the delivery of the deed, and the balance of $331,417, being the amount outstanding and unpaid on the mortgage, and subject to the lien thereof. The agreement contained a clause that settlement should be made ninety days after the approval by this court of the terms of the contract, and it contained this stipulation:
"It is hereby understood and agreed that Samuel Lesser is the broker who effected this sale, and said parties of the first part [the receiver] hereby agree to pay said broker a commission of five (5) per cent. for the sale of the plant and a commission of two and one-half (2 1/2) per cent. for the sale of the other parcels, or such other commission as may be approved by the court of chancery, if and when this sale is consummated and the purchase price paid."
And contained this still further provision:
"And it is further agreed that this agreement is made subject to the approval of the court of chancery of New Jersey, and shall be consummated in accordance with the statutes in such case made and provided, and under the direction of the said court of chancery."
On August 19th, 1924, an order to show cause why the receivers should not consummate the sale of the property included *Page 434 
in the agreement of July 31st with the John J. Reilly Stevedoring Company, Inc., for the gross consideration of $550,000, and why the receivers should not be directed to pay the real estate broker who negotiated the sale the commissions mentioned in the agreement, was returnable, having been served upon the stockholders of the defendant company and the Commercial Trust Company, the mortgagee trustee, and Charles T. Brown, in open court, having offered to pay the sum of $560,000, without brokerage, for the property, an order was entered that the agreement of sale of July 31st, 1924, be not then consummated and that no commissions be then allowed to the broker who effected said contract; and it was further ordered that the receivers advertise for sale at public auction on Thursday, August 28th, 1924, the real estate and personal property referred to and more particularly described in the petition filed August 2d 1924, and the above-mentioned order to show cause made thereon, and that they be directed, subject to the approval of this court, to enter into a contract with the purchaser at that sale, and report the same for confirmation on Tuesday, September 2d 1924. And now, on the return of the last-mentioned order to show cause, the receivers, on notice to the parties interested, report that pursuant to the order of August 19th, 1924, they offered the property for sale at public vendue, comprising the plant of the defendant company and other property therein described, and that Charles T. Brown then and there bidding the sum of $625,000 for the premises, and no one bidding so much, or more, for the same, the property was struck off and sold to him for that sum, he being the highest bidder therefor. The conditions of sale were that the property comprising the plant would be sold subject to the mortgage bond issue, on which there was then due approximately $332,000, that the successful bidder would be required to sign a contract, subject to the approval of this court, which contract was signed and annexed to their report.
The cash for the equity of redemption under the Reilly bid at private sale, reported August 19th, 1924, is $191,750, *Page 435 
and that of the Brown bid, at public sale, reported September 2d 1924, is $293,000, making a difference of $101,250 in favor of the Brown bid, being over fifty-two per cent. excess.
On August 19th, 1924, on the return of the order to show cause, and when the bid of the John J. Reilly Stevedoring Company, Inc., was reported, that concern was represented by a New York attorney, who was not associated with any solicitor of our state, and, having no audience in our courts, he could not be introducedpro hac vice. The order of that date calling for a resale at public vendue was not opposed by anyone who had standing before the court.
The Reilly Stevedoring Company did not bid at the public sale, but was represented before the court on September 2d 1924, by counsel on the return of the order to show cause and the report of the receivers of the sale of August 28th, 1924, and insisted that that company's bid, reported on August 19th, 1924, should be confirmed, instead of the Brown bid, reported on September 2d 1924.
Reliance for this position is principally rested upon the doctrine of Morrissee v. Inglis, 46 N.J. Eq. 306; Rogers v.Rogers Locomotive Co., 62 N.J. Eq. 111; Bethlehem Iron Co. v.Philadelphia Seashore Railroad Co., 49 N.J. Eq. 356, to the effect that mere inadequacy of a bid, if the sale is regular, and made without fraud, and where no accident or mistake has intervened to prevent fair competition, will not warrant the court in setting it aside and ordering a resale, and depriving the bona fide bidder of the advantage of his bid, because it is the policy of the law to encourage the attendance of bidders at judicial sales.
Counsel for the receivers contends that this case does not come within the rule laid down in the cases cited, because those cases refer only to public sales, and not private ones, and because the difference in the price in this case is so far greater than those in the others. The excess offered in Morrissee v. Inglis was approximately ten per cent.; in Rogers v. Rogers LocomotiveCo., approximately ten per cent., and in Bethlehem Iron Co. v.Phila. Seashore Railroad Co., approximately *Page 436 
twenty per cent., while here it is approximately fifty-two per cent.
But in Porch v. Agnew Co., 66 N.J. Eq. 232, Vice-Chancellor Grey had before him a sale of property which brought $33,000, when it appeared it was actually worth $60,000 to $100,000, and he ordered a resale, making it a condition that at least $60,000 should be bid at the subsequent sale as an up-set price. This case was affirmed on the opinion of the vice-chancellor. Porch
v. Agnew Co., 67 N.J. Eq. 727.
The case in hand is more nearly like that of Porch v. AgnewCo. than it is like Morrissee v. Inglis, Rogers v. RogersLocomotive Co., or Bethlehem Iron Co. v. PhiladelphiaSeashore Railroad Co. And the very great disparity in the bids, over fifty-two per cent., would incline me to the opinion that the Reilly Company's bid at private sale was so grossly inadequate, considering what must be the value of the plant, as to call for a denial of confirmation of the sale to Reilly, and, on the contrary, the confirmation of that to Brown, especially in view of the very great amount of disparity, namely, over $100,000.
Furthermore, the Reilly concern has not been diligent in its own behalf, in that it did not protect its interests on August 19th, 1924, by appearing and urging confirmation of the sale to, and agreement with it, as reported. Besides, its bid and contract was, by the agreement, expressly made subject to the approval of the court. Upon this phase of the matter I am of opinion that the bid of the Reilly Stevedoring Company, Inc., should be rejected, and that of Charles R. Brown confirmed, and the receivers ordered to make conveyance to him according to the terms of the contract between them and him upon his complying with the terms of sale.
One other matter remains — that concerning the claim of Samuel Lesser for commissions for negotiating the sale to the Reilly Stevedoring Company, Inc. His counsel contends that he rendered laborious, time-consuming and valuable service to the receivers in bringing about the offer and tentative *Page 437 
sale to the Reilly concern, which ultimately resulted in benefit to the estate, citing Dey v. Codman, 39 N.J. Eq. 258, 268.
In Hill v. Hill, 79 N.J. Eq. 521, Judge Rellstab, in the orphans court, whose opinion is printed as an appendix to that of Pitney, Ordinary (at p. 545), said (at p. 546), that "on a sale of the testator's land the intervention of a broker may or may not be necessary. If not necessary, the brocage paid will not be allowed unless it can be shown that by employing a real estate agent the estate has been benefited in a pecuniary sense to at least the amount of expense incurred by such employment." And (atp. 547), that "in passing upon such employment, the test on the question of compensating the agent out of the estate is, Was it necessary or was it to the interest of the estate? If it was, the expenses thus incurred are allowed; if not, they will be disallowed. Upon this question the burden of proof is upon the accountants. For New Jersey cases on this subject see 3 N.J.Dig. Ann., Div. Ex'rx Ad'mrs ¶ 92. And for cases in other states, see 7 Am. Eng. Encyc. L. 431; 18 Cyc. 272, and cases noted in 64 L.R.A. 554." And Chancellor Pitney, in his opinion in the prerogative court (at p. 542), said that upon the question of broker's commissions he concurred in the views expressed by Judge Rellstab.
Receivers, like executors, are trustees; the same law generally and in similar circumstances applies equally to all of them. In this case the receivers' circulars offered to pay a commission to real estate brokers who represented successful bidders, if and when the sale was consummated and the purchase price paid, and the contract of the receivers with the Reilly concern stipulated that Lesser was the broker who effected the sale, and the receivers agreed to pay him a certain commission named, or such commission as might be approved by the court, if and when the sale was consummated and the purchase price paid. Mr. Lesser was not a party to that contract but it was one made for his benefit, and on which it appears he is entitled to sue. Burt *Page 438 
v. Brownstone Real Estate Co., 95 N.J. Law 457. And the supreme court held, in Klipper v. Schlossberg, 96 N.J. Law 397, that unless a broker and his employer have stipulated to the contrary, the broker is entitled to his compensation upon the completing of the negotiations he undertook, irrespective of whether or not the contract negotiated is ever consummated, so long as the failure to carry it through to a successful completion is not due to any fault of the broker. It may be that the broker is entitled to be compensated in this case, but this question it is neither necessary nor proper now to decide. He should make his claim to the receivers in the usual way, whose duty it would then become to allow or disallow it. He will be given ten days in which to file his claim with the receivers. If he should be aggrieved by their determination, the claim being against a corporation which has been dissolved and is in process of being wound up, it seems that his remedy would be by suit at law, under P.L. 1921 p.724, instead of by appeal to the chancellor under Comp. Stat.p. 1649 § 78.
The sale to Brown will be confirmed; Lesser's claim for compensation in negotiating the Reilly sale will be referred to the receivers. Order accordingly.