Two petitioners seek payment of their claims refused by the receiver.
The receiver contracted to sell the company's plant to Gwillim, one of the petitioners, at private sale, approved by the court, for $40,000. An earnest of $500 was paid, and, later, $2,500, upon the receiver stipulating in writing to extend the time of closing to March 20th, 1922, the purchaser agreeing to pay the meantime carrying charges. Gwillim was unable to raise the price, and, after waiting patiently a year, the receiver, with the court's sanction, sold the plant to Johnson Products Company for $55,000. The carrying charges amount to $7,175.74. Gwillim now asks for the return of his deposits.
Time was of the essence of the contract. The stipulation extending the time is evidence of that. King v. Ruckman,20 N.J. Eq. 316; Orange Society v. Konski, 94 N.J. Eq. 632. But the receiver was not exacting, and, although constantly urging, was sympathetic and indulgent, and hopeful that Gwillim would succeed in his struggle, and was, up to the time another purchaser was found, anxious that he should have the property. On the return day of the order to show cause why the new sale should not be confirmed and the confirmation of his contract revoked, Gwillim announced his ability and readiness to perform. Some one had come to his rescue in the pinch, but, as often happens, too late, and besides the new purchaser, whose original offer had been $40,000, raised it to $55,000, which he was unable to meet. Had there been parity of price Gwillim would have been favored, though he had lost his right to demand *Page 479 
specific performance by his delay. Wachung, c., Co. v.Llewellyn, c., Corp., 96 N.J. Eq. 498. The penalty ought not be pressed beyond withholding from him the benefit of his bargain. He was willing but unfortunate. The creditors have suffered no loss, rather they have profited. It would be inequitable. Wachung, c., Co. v. Llewellyn, c., Co., supra.
The deposits will be ordered returned, with interest, if any has been collected by the receiver.
Gwillim paid the wages of the watchman of the plant as part of the carrying charge undertaken by him in the written stipulation extending the time of performance of the agreement, and he asks reimbursement. He was in possession and had the benefit of the watchman's services. Denied.
Kraemer, the other petitioner, a real estate agent, claims his salesman, Smith, negotiated the sale to Johnson Products Company for $40,000 on the verbal promise of the receiver to pay him a commission of five per cent. on that sum. Upon the bid being presented to the court for its approval it was, as already stated, increased to $55,000 and was confirmed, and the sale was executed. Kraemer petitioned the court to direct the receiver to pay the commission. This was denied upon a statement of counsel in open court that the contract, if made, was verbal, within the statute of frauds, and that the receiver denied making it. Leave to sue at law was given. That was wrong practice. The adjudication in this court should have been final. Potter v.Spa Spring Brick Co., 47 N.J. Eq. 442; Vanderbilt v. C.R.R.Co., 43 N.J. Eq. 669. The action at law was by consent of the parties referred to a supreme court commissioner under section 155 of the Practice act (a questionable practice — New YorkMetal Ceiling Co. v. Kiernan, 73 N.J. Law 763), who found and reported that the petitioner negotiated the sale upon the receiver's promise to pay him the commission, but as the promise was not in writing, and as the petitioner had not mailed a registered letter to the receiver within five days after the authorization to sell, as required by chapter 273 of the laws of 1918 (1 Comp. Stat. Cum. Supp. p. 1452), the agreement was within the statute and unenforceable. *Page 480 
On a rehearing of his application the petitioner presents the plea that while he is barred at law, a court of equity ought not to permit its receiver to interpose the statute of frauds. Upon looking into the testimony taken by the commissioner it appears that the purchaser, a client of the real estate agent, was in search of a factory, and, after showing him many others, Smith, so he testified, called on the receiver and told him he had a prospect and asked if he had authority to pay him a five per cent. commission, and that the receiver replied he had, and that he would pay it. The receiver denied the inquiry and the promise and claimed that whatever connection the salesman had with the sale was as representative of the purchaser. The only other bit of testimony was that of the purchaser, who said he stated to the receiver that he would pay no commission, to which the receiver replied that he would take care of that. It was the word of the petitioner against that of the receiver. The burden of proof was on the petitioner. The proofs were in balance. The petitioner, it would seem, had failed on the issue of fact. With the testimony in such sharp conflict, it was not only the right but the duty of the receiver to interpose the statute in bar. The exigency illustrates the wisdom of the policy requiring written proof of such transactions.
The cause of action is strictly legal and subject to legal defenses and is controlled by the rules of law, though the remedy is in equity. Buttlar v. Buttlar, 57 N.J. Eq. 645. Equity will not, of course, permit its receivers to hide behind the statute of frauds to accomplish a fraud, but the principle is not applicable.
It does not follow, however, that an admittedly retained real estate agent is not entitled to compensation for negotiating a sale of real estate for a receiver if his authority is not in writing or he has failed to comply in other respects with the provisions of the statute. If his services are necessary or beneficial to the estate reasonable allowance will be made. Inre New Jersey Refrigerating Co., 96 N.J. Eq. 431.
 The prayer of the petition is denied. *Page 481