GEORGE E. PHILLIPS, PLAINTIFF IN ERROR, v. RALPH L. PULLEN, DEFENDANT IN ERROR.

1. A defendant in an action of tort gave his attorney general instructions to negotiate for a settlement, and after learning the lowest sum plaintiff would accept, instructed the attorney to settle on the best terms he could.—*Held*, that the attorney acquired authority to execute an agreement of settlement and to bind his client to pay a fixed sum for damages.

2. Although the action thus settled was for *crim. con.*, the contract to pay the agreed-on damages was not based on an illegal consideration.

3. The agreement provided for a settlement of the suit on terms of the payment by defendant to plaintiff of $7500; defendant undertook to pay that sum at a fixed time; plaintiff undertook to release defendant from the damages claimed in the action upon such payment.—*Held*, that a sufficient consideration for the defendant's undertaking appeared.

4. An action was brought upon defendant's undertaking to pay, and it appeared that after the execution of the agreement plaintiff's attorney had noticed the original suit for trial.—*Held*, that this evidence would not justify a finding that the agreement had been rescinded or abandoned, in the absence of proof of express authority to that effect, or a mutual rescission and abandonment of the agreement.

5. In that action defendant offered evidence designed to show that when the original action was brought and when the settlement was made, the plaintiff knew that his claims were without any foundation.—*Held*, that such evidence was properly admitted; but the evidence admitted not being sufficient to justify such a finding—*Held further*, that it was properly withdrawn from the consideration of the jury.

6. In the absence of matter defeating recovery on such an undertaking, the verdict was properly directed for the whole sum agreed to be paid, with interest.

Error to Mercer Circuit.

For the plaintiff in error, *W. Y. Johnson* and the *Attorney-General.*

For the defendant in error, *C. H. Beasley, G. O. Vanderbilt* and *W. D. Holt.*

The opinion of the court was delivered by

MAGIE, J.    The assignments of error are directed at the action of the Circuit Court in refusing to non-suit, and in directing a verdict for the plaintiff below, notwithstanding the evidence on the part of the defendant below.

The questions thus raised may be considered together, for it is obvious that the direction to find a verdict cannot be justified unless it appears, not only that the rejected evidence ought not to have been submitted to the jury, but also that the evidence on the part of the plaintiff below was both proper to be left to the jury, and so conclusive that it required a verdict in his favor.

The action was brought by Pullen against Phillips, in contract. The declaration (which was in form a declaration in *assumpsit*) averred the existence of a former suit brought in the Supreme Court by Pullen against Phillips, and its settlement by a written agreement. The pleadings in that suit and the agreement of settlement were annexed to and made part of the declaration.

It thereby appeared that the former action was in case. The declaration therein contained a count for criminal conversation with Pullen's wife, a count for enticing her from Pullen and a count for harboring her. The plea was the general issue.

The agreement of settlement was in these words:

"NEW JERSEY SUPREME. COURT.
"MERCER COUNTY CIRCUIT.

"Ralph L. Pullen
*v.* } In case.
"George E. Phillips.

"The said cause having been settled by the parties upon the terms that the said defendant is to pay the plaintiff, or his attorney, the sum of seven thousand and five hundred dollars, in full satisfaction of all damages under said cause. If, therefore, agreed by the respective counsel of the said parties that the payment of the said sum shall be made within two weeks from the date hereof. And upon such payment the said plaintiff shall execute a release to the defendant in full for the damages claimed in said action.

"Dated Trenton, N. J., January 20th, 1886.
"G. D. W. VROOM,
"*Att'y of Deft.*

"GEO. O. VANDERBILT,
"*Att'y of Plaintiff.*"

The declaration in the action before us was founded on the *assumpsit* contained in that agreement.

The cause went to trial on a plea of *non-assumpsit*.

Since the undertaking was not executed by Phillips but by his attorney, the objection which challenges the sufficiency of the proof of the attorneys's authority to thus bind Phillips ought to be first considered. It is conceded by counsel that such authority cannot be inferred from his employment as attorney, but must have been expressly conferred.

The proof of Mr. Vroom's authority came from himself. He was called for Pullen, and permitted to testify as to trans-actions with his client under a waiver of the privilege of an attorney (if such privilege could be claimed) made by Phillip's counsel. It thereby appeared that under a general authority from Phillips, he had commenced negotiations for a settle-ment of the suit for *crim. con.*, which were continued on the first day of the term at which it was noticed for trial. They terminated that day with a refusal by those representing Pul-len to settle for any sum less than $7500. This refusal was communicated to Phillips, who, in turn, refused to give so much. The next morning—the cause being then liable to be called for trial soon—Phillips told Vroom to settle on the best terms he could. Vroom saw Vanderbilt, who was acting for Pullen, and having ascertained that no better terms could be obtained, agreed to settle on the terms before proposed. They both announced to the court that the case was settled, and executed the agreement in question.

Phillips was not examined as a witness, and the testimony of Vroom as to the express direction to settle was uncontra-dicted.

The contention, however, is that there was evidence in the cross-examination of Vroom and the examination of Edward T. Green tending to show that the authority conferred by Phillips was conditioned upon a settlement of all matters whereby his alleged relations with Mrs. Pullen might become the subject of judicial investigation. But I am unable to find any evidence which would have justified the jury in such a finding. Green intervened in the negotiations as represen-tative of Phillips' brother, but retired before the final arrange-

ment. Vroom declared that he notified Pullen's representa-- tives that his client asserted his innocence and only consented to negotiate from a desire to avoid scandal. But there was no treaty for an agreement that Pullen would not file a bill for divorce on the ground of adultery, or would not testify upon a criminal complaint, and, obviously, no one of those con- cerned in the negotiations would have suggested or counte-- nanced such an agreement. The security against scandal sought for was such as would be afforded by a release. The negotiations eventuated in an agreement for a release from the damages claimed. None of this evidence would justify the inference that Vroom's authority was limited in this respect.

It is next contended that Phillips' undertaking lacked a sufficient consideration.

This contention is first put on the ground that the consid- eration was illegal, being for the past illicit connection with Pullen's wife. But this is a misconception of the transaction. If the contract to pay had been based on Pullen's previous consent to the illicit connection, it might well be said that the contract was void because given for an immoral consideration. But the agreement was not of that character. It was entitled in a suit brought to recover damages for a tortious invasion of marital rights. It provided for a settlement of the claim so made by fixing the amount of damages resulting from Phillips' alleged wrong-doing, to be paid by him. There is no taint of illegality in such a transaction.

It is next urged that the consideration was executory, and that Pullen had not done what he was bound to do, because he had not discontinued the original action. But the agree- ment did not bind him to discontinue, but only to proceed no further and to give a release upon payment of the stipulated sum. If Phillips had brought the agreement to the knowl- edge of the court and asked an order of discontinuance, it would doubtless have been granted. It may, therefore, be said that Pullen agreed to a discontinuance if demanded. The agreement for forbearance was carried out and the situ- ation produced was this: the damages were liquidated so that

Pullen could obtain, and Phillips could be answerable for, no more than the fixed sum; and the proceedings in the pending suit were forborne and the suit might, on demand, be discontinued. It, therefore, furnished a sufficient consideration for the promise to pay. *Conover* v. *Stillwell*, 5 *Vroom* 54; *Union Co.* v. *Erie R. R. Co.*, 8 *Vroom* 23; *American notes to Stapelton* v. *Stapelton, L. C. in Eq.*, § 593; 1 *Pars. on Cont.* 440, and cases cited; *Collins* v. *Gibbs*, 2 *Burr.* 899.

It was much urged in argument that a release should have been tendered, broader in its terms than the agreement called for. But if any tender was required, this claim was without force unless the agreement in that respect had been modified, of which there was not the least evidence.

Another contention was that there was evidence to go to the jury of an abandonment or rescission of the agreement in question. This was urged upon the single fact that Pullen's attorney in the original action noticed that cause for trial at the next term. This objection, at first sight, seemed serious, but subsequent consideration has convinced me that it is without force.

By the agreement of settlement Pullen obtained a substantial advantage which his attorney could not waive or release without express authority. No such authority was shown. The authority acquired by the original retainer would probably justify the attorney in any acts which would carry out the settlement agreed to, but not in consenting to the rescission or abandonment of the agreement.

If Pullen had directed the notice a different result could not be reached. If Phillips had proposed to rescind the agreement, such a direction might furnish evidence of an assent to the proposition. If he had repudiated the agreement as not authorized, such a direction might justify the inference that Pullen admitted a lack of authority and abandoned any claim under it. But there was no request to rescind, nor any repudiation, then, of Vroom's authority, and the agreement was mutually obligatory. There is no room

Phillips v. Pullen.

for any construction permitting either party to destroy or abandon it. It could only be set aside by mutual action.

Much of the testimony on Phillips' part was offered to show that the original action was known to Pullen to be without any foundation. It was contended that if that fact was established, the agreement to settle was vitiated. Evidence of that character was clearly admissible. If the original suit was for black-mail, and if Pullen made a scandalous, but false, charge, and by exciting fear of the publicity given to such a claim by a defence and trial, forced his victim to agree to pay damages for which Pullen knew he was not liable, the fraud of the original imposition would so enter into the extorted contract that no court of justice could sustain it for a moment.

By the argument, it is claimed that the court below, in directing the verdict, receded from its previous ruling admitting the offer to prove such fraud. But this is an error. The refusal to submit the evidence put in under the offer was put on the sole ground that it was inadequate to prove the fraud alleged. The language of the trial justice discloses the real ground for excluding the evidence from consideration to have been, not because it was inadmissible as matter of law, but because a verdict thereon finding "knowledge in the plaintiff that the compromise had no basis in fact" could not be sustained.

A careful review of the evidence has led me to the conclusion that nothing contained in it would justify a finding that Pullen's claims were fraudulent or made for extortion. Under such circumstances, the withdrawal of the evidence from the consideration of the jury was not erroneous.

It was further insisted that it was erroneous to direct a verdict for the amount stipulated for in the agreement, but that it should have been left to the jury to say, upon the whole evidence, what were reasonable damages for the breach of the undertaking sued upon.

In an action on an undertaking to pay a specific sum the rule for measuring damages is compensation, which can only

be afforded by a verdict for that sum, with interest. No reason why this case should be taken out of that rule is suggested, but that the agreement was unreasonable and unconscionable. But if it might have been avoided in equity upon that ground, nothing short of fraud will affect it at law, and fraud would not be ground for reducing damages but for defeating recovery. There is nothing in the stipulated sum to justify an inference of fraud. The original suit sought to recover damages incapable of accurate determination. Had it proceeded to trial the *quantum* of damages must have been determined by a jury, upon the circumstances. Where the parties, knowing the circumstances, liquidate such damages by an agreement not brought about by deceit or imposition, it cannot be said that such damages are unconscionable.

None of the errors assigned having been found to exist, the judgment should be affirmed.

*For affirmance*—The Chancellor, Depue, Dixon, Knapp, Magie, Reed, Van Syckel, Clement, Cole, McGregor. 10.

*For reversal*—Brown, Whitaker. 2.